**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ARKEMA INC.,

    *Plaintiff*,

    v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, and

LEE ZELDIN, in his official capacity as
Administrator of the United States
Environmental Protection Agency,

    *Defendants*.

Civil Action No.

**COMPLAINT**

Plaintiff Arkema Inc. ("Arkema"), hereby files this Complaint against Defendants United

States Environmental Protection Agency ("EPA") and Lee Zeldin, in his official capacity as

Administrator of EPA, and alleges as follows:

**NATURE OF THE ACTION**

1. Arkema brings this civil action under Section 14 of the Toxic Substances Control

Act ("TSCA"), 15 U.S.C. § 2613, to restrain the unlawful disclosure of protected confidential

business information ("CBI").

2. TSCA protects from disclosure any CBI (including trade secrets or commercial,

financial, or proprietary information) that is reported to or otherwise obtained by EPA under TSCA,

including in applications for EPA to conduct risk-based reviews of new chemical substances prior

to introduction into U.S. commerce.

3. These applications, or premanufacture notifications ("PMN"), often contain

information protected as CBI under TSCA, which reflects the submitters' significant investment

{10025.006 / 111 / 00483262.DOCX 11}

and commercial interest in the development of new chemistries intended to advance more sustainable or safer alternatives, replacing potentially hazardous existing chemicals on the market, or introducing innovative or more effective products and technologies.

4.      Such protected information includes, additionally, proprietary information that ensures a competitive market in the United States that drives technological development while ensuring that companies are not at risk of substantial competitive harm.

5.      Congress addressed the significance of balancing the need for innovation in the chemical sector and investment in novel, effective, more sustainable, chemistries and alternatives, including replacements for existing chemical substances that present an unreasonable risk to health or the environment, with TSCA's mandate to ensure that "such innovation and commerce" do not present such risk. 15 U.S.C. § 2601(b)(3).

6.      Congress set forth as U.S. policy that EPA's "authority over chemical substances and mixtures should be exercised in a manner as not to impede unduly or create unnecessary economic barriers to technological innovation while fulfilling the primary purpose of this [Act] to assure that such innovation and commerce in such chemical substances and mixtures do not present an unreasonable risk of injury to health or the environment." 15 U.S.C. § 2601(b)(3).

7.      The protections for CBI under TSCA Section 14 are one critical component in balancing the aims of establishing necessary protections under TSCA without unduly impeding technological innovation in regulating new chemical substances. 15 U.S.C. § 2613.

8.      In striking such balance, TSCA Section 14 establishes strong protections for CBI submitted to EPA in PMN applications, including information such as the specific chemical identity and specific information describing the processes used in the manufacture or processing, among other information, while also requiring submitters of such information to verify or

substantiate certain claims, and establishes exclusions for information that may be claimed as CBI (including information from health and safety studies) and specific instances where EPA can disclose CBI to a third party.

9.      The requirements of TSCA Section 14 are exacting: claimants of CBI carefully identify, certify, and substantiate (where applicable), and then maintain and safeguard such information, and reassert, resubstantiate, and extend these claims. In contrast, EPA must additionally take care to safeguard such information. TSCA sets forth criminal penalties for the knowing and willful disclosure of CBI. 15 U.S.C. § 2613(h).

10.     The limited circumstances where EPA may disclose protected CBI to a third party are set forth under TSCA Section 14(d). These include disclosures to officers or employees of the United States in connection with official duties for the protection of health or the environment, for enforcement purposes, and to specified persons responding to emergency or nonemergency situations concerning potential health, exposure, or release concerns.

11.     TSCA Section 14(d)(9) authorizes EPA to disclose information "as required pursuant to discovery, subpoena, other court order, or any other judicial process otherwise allowed under applicable Federal or State law." 15 U.S.C. § 2613(d)(9).

12.     Plaintiff Arkema is the North American subsidiary of a global specialty chemicals manufacturer, focused on high-performance materials, industrial specialties, and coating solutions.

13.     In an ever-changing world, innovation must be able to address society's dynamic energy and technology challenges. Mostly focused on sustainable development, the Arkema's research and development (R&D) activities make it one of the most innovative chemical manufacturers in the world, with an R&D team that carefully watches market trends and works relentlessly to put in place pioneering and sustainable solutions.

14.    EPA notified Arkema, pursuant to the provisions of TSCA Section 14(g), that EPA intends to disclose Arkema's CBI submitted to EPA in its PMNs pursuant to TSCA Section 14(d)(9) in response to an unnecessarily broad request under a citizens' action for unmonitored access to CBI from over 80 unredacted PMNs held by an unknown number of submitters.

15.    Although the information will be released pursuant to a protective order and must ultimately be returned to EPA or destroyed by the recipients, the broad scope of the mandated under the terms of the protective order are insufficiently protective of propriety information – which is the engine that drives chemical innovation in the United States and globally.

16.    Furthermore, this tremendous and unprecedented disclosure of CBI does not balance the aims of protection of health or the environment; while the disclosure is a result of a TSCA Section 20 citizens' petition regarding concerns with EPA's timing and transparency in providing certain information to the public on PMNs, the allegations raised in the complaint pertain to unfounded suspicions that EPA has engaged in a pattern or practice of unlawful behavior in withholding certain health and safety information from public review, and allowing overly broad claims of confidentiality for such information under TSCA. Notwithstanding the concerns with the validity of those arguments, the release of full, unredacted PMNs, which contain information that could not be confused for information from health and safety studies, including specific chemical identities and specific information describing the processes used in the manufacture or processing of the PMN substance, shed no light on the plaintiff's allegations.

17.    Moreover, the standards for protection of this information under the terms of the protective order are substantially less stringent than the standards imposed on EPA and submitters to maintain confidentiality under TSCA, and the safeguards included in EPA's own guidance.

Arkema has a well-grounded expectation that these protections would not erode or be diminished over time.

18.    Because disclosure of Arkema's confidential information is not justified under TSCA Section 20 and does not meet the conditions for disclosure under TSCA Sections 14(d)(9) and 14(d)(4), and because any intentional or inadvertent release of Arkema's CBI could cause irreparable financial harm, Arkema brings this action to restrain the release of that information and enforce its rights under TSCA Section 14.

## PARTIES

19.    Plaintiff Arkema is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in King of Prussia, Pennsylvania.

20.    Defendant EPA is the United States agency responsible for implementing TSCA, including provisions of the Act pertaining to CBI. 15 U.S.C. § 2613.

21.    Defendant Lee Zeldin, named in his official capacity as Administrator of EPA, is responsible for administering and enforcing TSCA.

22.    Defendants EPA and Administrator Zeldin maintain an office at 1200 Pennsylvania Avenue N.W., Washington, D.C. 20460.

## JURISDICTION AND VENUE

23.    This Court has jurisdiction under the following statutes:

    a.    28 U.S.C. § 1331 because this civil action arises under the laws of the United States;

    b.    28 U.S.C. § 1346(a)(2) because Arkema asserts claims against the United States;

{10025.006 / 111 / 00483262.DOCX 11}        5

c.  28 U.S.C. § 1361 because this is an action to compel officers of the United States to perform their duties;

d.  28 U.S.C. §§ 2201–02 because this is an actual, justiciable controversy as to which Arkema requires a declaration of its rights by this Court and injunctive relief to prohibit Defendants from violating laws and regulations; and

e.  15 U.S.C. § 2613(g)(2)(D)(i) because this is an action to restrain disclosure of CBI.

24.  Venue is proper in this Court under 15 U.S.C. § 2613(g)(2)(D)(i)(II) as the United States District Court for the District of Columbia.

## FACTUAL BACKGROUND

### I.  Statutory and Regulatory Background

25.  Under TSCA, no person may commence the manufacture (defined to include import) of a new chemical substance in the United States without compliance with the risk-based review requirements of TSCA Section 5. 15 U.S.C. § 2604(a)(1).

26.  Subject to certain exemptions and exclusions, before introducing a new chemical substance into U.S. commerce, manufacturers and importers must submit a notice to EPA called a premanufacture notification or PMN. 15 U.S.C. § 2604; 40 C.F.R. Parts 720, 723.

27.  Once EPA receives a PMN for a new chemical substance, EPA must conduct a review of the notice to determine whether the chemical substance is likely to present an unreasonable risk of injury to health or the environment (or an "unreasonable risk"), including such risk to potentially exposed or susceptible subpopulations ("PESS"), without considering costs or other nonrisk factors, under the conditions of use. 15 U.S.C. § 2604(a)(3).

28.     TSCA sets forth three potential determinations that EPA may issue for PMNs and their corresponding actions. 15 U.S.C. § 2604(a)(3). EPA may determine that the PMN substance is not likely to present an unreasonable risk under the conditions of use. Upon notice of such determination, the PMN submitter may commence manufacture of the substance. EPA must publish a statement of its finding in the *Federal Register* as soon as practicable before the expiration of any remaining portion of EPA's review period. 15 U.S.C. § 2604(a)(3)(C), (g).

29.     Requirements for information to include in the PMN are described under TSCA Section 5(d) and implemented in further detail under EPA regulations. 15 U.S.C. § 2604(d); 40 C.F.R. Part 720.

30.     The PMN must include the common trade name, chemical identity, and molecular structure of the PMN substance; categories of use; the total amount to be manufactured or processed; information on byproducts resulting from manufacture, processing, use, or disposal; all existing information concerning the environmental and health effects of the substance, the number of individuals who will be exposed to such substance in the workplace; and the manner or method of disposal. 15 U.S.C. § 2604(d)(1)(A).

31.     The PMN must also include any information in the PMN submitter's possession or control related to the effect of any activity involving the substance, and a description of any other information concerning the environmental and health effects of the substance (insofar as known or reasonably ascertainable to the submitter). 15 U.S.C. § 2604(d)(1)(B)-(C).

32.     The process of preparing a PMN under TSCA Section 5(a), to receiving EPA's determination under TSCA Section 5(e)-(g), is time-, information-, and resource-intensive.

33.     This is demonstrated by challenges faced by EPA in completing reviews in the timeframes required under TSCA. In assessing fees for the administration of TSCA by rulemaking,

in requiring persons to remit fees totaling $37,000 for each PMN submission, EPA explained the need for additional resources to support work for new cases and to reduce EPA's backlog of pending PMNs. 89 Fed. Reg. 12961, 12967 (Feb. 21, 2024).

34.     Though TSCA Section 5 specifies that EPA must conduct its review of PMNs within 90 days, to accord with the requirement for manufacturers to submit PMNs at least 90 days before the activity is set to commence, the review period may extend across multiple years. 15 U.S.C. § 2604(a)(1)(B)(i).

35.     While a significant and vital process under TSCA to meet its aims of protecting against unreasonable risk that may be presented by new and existing chemical substances in the United States, the PMN is not the first step of preparing a new chemical substance for commercialization in the United States.

36.     The process for EPA to complete its risk assessment and determination for new chemical substances prior to commercialization in the United States, therefore, involves review of significant amounts of proprietary, trade secret, and CBI, both in regard to the specific chemical identities, compositions, and manufacturing processes and the data developed in support of the submission.

37.     TSCA sets forth as U.S. policy that "authority over chemical substances and mixtures should be exercised in such a manner as not to impede unduly or create unnecessary economic barriers to technological innovation while fulfilling the primary purpose of this [Act] to assure that such innovation and commerce in such chemical substances and mixtures do not present an unreasonable risk of injury to health or the environment." 15 U.S.C. § 2601(b)(3).

38.     TSCA Section 14 mandates that EPA must not disclose information that is exempt disclosure under the Exemption 4 of the Freedom of Information Act (FOIA), which includes

{10025.006 / 111 / 00483262.DOCX 11}          8

"trade secrets" or "privileged or [CBI]" submitted to the agency. 5 U.S.C. § 552(b)(4); 15 U.S.C. § 2613(a).

39.    TSCA specifies that certain information is not protected from disclosure, including documents that contain both confidential and nonconfidential information (information protected from disclosure does not lose its protections, whereas information not protected from disclosure may still be released); information from health and safety studies; certain general information pertaining to aggregated production volumes; general descriptions of processes or uses that would customarily be shared with the general public or industry; and certain information on chemical substances subject to a ban or phase-out under TSCA Section 6. 15 U.S.C. § 2613(b).

40.    Persons seeking to protect information from disclosure submitted to EPA under TSCA must assert a claim for protection concurrent with the submission and pursuant to EPA's implementing regulations under 40 C.F.R. Part 703. 15 U.S.C. § 2613(c)(1).

41.    The person asserting a CBI claim must certify that the person has "(i) taken reasonable measures to protect the confidentiality of the information; (ii) determined that the information is not required to be disclosed or otherwise made available to the public under any other Federal law; (iii) a reasonable basis to conclude that disclosure of the information is likely to cause substantial harm to the competitive position of the person; and (iv) a reasonable basis to believe that the information is not readily discoverable through reverse engineering." 15 U.S.C. § 2613(c)(1)(B).

42.    Persons submitting such claims must substantiate the claim both at the time of the initial submission and every ten years thereafter. 15 U.S.C. § 2613(e).

43.    Certain CBI is exempt from these substantiation requirements, and includes information such as specific information describing the processes used in manufacturing or

processing of the chemical substance, details of the full composition for mixtures and the respective percentages for constituents, marketing and sales information, information identifying a supplier or customer, specific information on the use, function, or application of a chemical substance, specific production or import volumes, and prior to the date on which a chemical substance is first offered for distribution, the specific chemical identity of the substance. 15 U.S.C. § 2613(c)(2).

44.     Persons asserting CBI claims must do so painstakingly to ensure their claims are not considered waived or withdrawn. PMN submitters, for example, to submit copies of documents in their PMN submissions securely via EPA's Central Data Exchange (CDX), submit two copies of each document (one containing CBI and one copy sanitized of such information) and ensure that all claims contain the required substantiation (if required). 40 C.F.R. § 703.5.

45.     EPA's web page on preparing PMNs warns firmly: "Do not e-mail any CBI to EPA. EPA's e-mail system is **not** secured to protect CBI." *See* EPA, Filing a Pre-Manufacture Notice with EPA, https://www.epa.gov/reviewing-new-chemicals-under-toxic-substances-control-act-tsca/filing-pre-manufacture-notice-epa (last visited March 13, 2026) (emphasis in original).

46.     TSCA establishes requirements for CBI claimants to maintain, reassert, resubstantiate, or extend CBI claims, and also requires EPA to review a representative subset, comprising at least 25 percent, of all CBI claims submitted under TSCA Section 14. 15 U.S.C. § 2613(g)(1)(C).

47.     In balance, the provisions of TSCA Section 5 and TSCA Section 14 are closely entwined to facilitate the submission, review, and commercialization of new chemical substances via the PMN process.

{10025.006 / 111 / 00483262.DOCX 11}          10

48.     TSCA also establishes specific instances where the public may engage in the new chemical review process, including specifying certain information that EPA must make available "for examination by interested persons" notices that EPA must proactively publish in the *Federal Register*, and EPA determinations that are subject to judicial review.

49.     EPA must make PMNs available for examination by interested persons, publish a notice in the *Federal Register* within five business days after receipt of a PMN identifying certain information in the PMN, subject to the protections for CBI under TSCA Section 14, and publish a list of PMNs subject to ongoing review at the beginning of each month in the *Federal Register*. 15 U.S.C. § 2604(d).

50.     Any person, further, may seek judicial review of an order issued under TSCA Sections 5(e) or 5(f) within 60 days after the order is issued. 15 U.S.C. § 2618(a)(1).

51.     Any person may additionally file a citizens' civil action under TSCA Section 20 against any person, including the United States, who is alleged to be in violation of TSCA (including any rule or order under TSCA Section 5) to restrain such violation, or against the EPA Administrator, to compel the Administrator to perform an act or duty which is not discretionary under TSCA. 15 U.S.C. § 2619.

52.     TSCA Section 20 further notes that "[n]othing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of this Act or any rule or order under this Act or to seek any other relief." 15 U.S.C. § 2619(c)(3).

53.     Congress conferred the sole authority to conduct inspections and issue subpoenas in administering the Act to EPA under TSCA Section 11.

54.    Congress additionally conferred the sole authority to determine whether information qualifies for protection as CBI to EPA, pursuant to the procedures set forth under TSCA Section 14. Interested persons are entitled under TSCA Section 5(d)(1) to review PMN notices, but are not entitled to review CBI or issue CBI determinations on the PMN submitter's CBI claims pertaining to those notices.

55.    In certain cases, Congress also authorized EPA to disclose CBI in specific circumstances. TSCA outlines circumstances and conditions for the release of CBI to health or environmental professionals or treating physicians and nurses, and first responders in emergency and nonemergency situations where the information is necessary to assist in diagnosis or treatment of one or more individuals, or where exposure or an environmental release has occurred. 15 U.S.C. § 2613(d)(5)-(6).

56.    EPA may additionally release CBI to officers, employees, and contractors of the United States in specific circumstances depending on their official duties under Federal law to protect health or the environment, for Federal law enforcement purposes, or to ensure satisfaction of a contract in connection with TSCA. Information may be disclosed to States, political subdivisions thereof, or tribal government, pursuant to an agreement to "ensure that the entity will take appropriate measures, and has adequate authority, to maintain the confidentiality of the information in accordance with procedures comparable to the procedures used by the Administrator to safeguard the information." 15 U.S.C. § 2613(d)(4).

57.    EPA may also disclose information "as required pursuant to discovery, subpoena, other court order, or any other judicial process otherwise allowed under applicable Federal or State law." 15 U.S.C. § 2613(d)(9).

58.     If EPA reviews a CBI claim and denies (or denies in part) a claim for confidentiality, or if EPA intends to disclose CBI pursuant to TSCA Section 14(d), EPA must notify the claimant of the denial or intent to disclose in a written notice. 15 U.S.C. § 2613(g)(2).

59.     EPA must not disclose any such information until 30 days after the claimant receives this notice. 15 U.S.C. § 2613(g)(2)(B); *see* 40 C.F.R. § 703.8(f) (establishing that the 30-day period begins "on the next business day following the date the notice is made available to the submitter").

60.     During this 30-day stay, the claimant may appeal EPA's decision by bringing a civil action to restrain the disclosure. *See* 15 U.S.C. § 2613(g)(2)(D)(i). If the claimant files a civil action to restrain disclosure in federal district court, EPA "shall not disclose" the information until the reviewing court resolves the litigation. *Id.* § 2613(g)(2)(D)(ii)(I). EPA must not disclose the CBI until the court "denie[s] the person's motion for a preliminary injunction," if one is brought, or "otherwise uph[olds] the EPA determination." 40 C.F.R. § 703.8(g).

## II.     Arkema's Confidential Business Information

61.     Founded in the United States in 2004, Arkema Inc. is the North American subsidiary of a global specialty chemicals manufacturer focused on advanced and specialty materials and coating solutions.

62.     Arkema devotes substantial resources to chemical innovation and the development of sustainable solutions, with the work of Arkema's R&D team revolving around five priorities: lightweight materials and design, electronic solutions, new energies, living comfort and home efficiency, and natural resources management. Arkema, King of Prussia, Pennsylvania, https://www.arkema.com/usa/en/united-states/headquarters/king-of-prussia-pa-hq/ (last visited March 13, 2026).

63.    Arkema and its global affiliates are committed to R&D and chemical innovation, dedicating 3.1% of revenue to R&D, staffing approximately 1,800 researchers across 17 global R&D centers (eight of which are located in the United States), and filing more than 200 new patents in 2025 with 90% of those related to sustainable development.

64.    Arkema's investment and commitment to chemical innovation meet regional and global needs for advanced chemical research and product programs, which is driven by a competitive market that is constituted on protections for proprietary research and materials, including protections under TSCA.

65.    Arkema, one of many companies committed to technical innovation in the United States, availed itself of the procedures set forth under TSCA Section 5, in accordance with the procedures for protection of Arkema's CBI pursuant to TSCA Section 14, and submitted two PMNs for chemical substances to EPA several years ago. Upon review of these PMNs, EPA issued determinations under TSCA Section 5(a)(3)(C) that the chemical substances are not likely to present an unreasonable risk to health or the environment, and confirmed Arkema's ability to commercialize these substances in compliance with TSCA.

66.    From the investment in the development of these unique and novel chemistries and information to support its PMN, to the preparation of the PMN submissions under TSCA Section 5(a), Arkema has upheld its burdens under TSCA Section 14 to maintain, substantiate, and safeguard the confidentiality of its information.

67.    Arkema's commitment to protecting CBI was reinforced during the substantiation process where Arkema ensured that critical information, including the identity of the company and site; the specific chemical identity; formulas; import, manufacturing, processing, and use related information, production volume information, and market and sales information, were claimed as

confidential, certified, and where required, substantiated, submitted to EPA using secure channels, and safeguarded to maintain such confidentiality.

68.     Where required, for example, Arkema explained in its substantiation forms the substantial harm to Arkema's competitive position that would be caused by public disclosure, as this would allow competitors to gain access and insight into confidential elements of Arkema's processes and provide competitors with commercial advantages by disclosing proprietary information without the need to engage in competitive actions or independent R&D.

## III.     Separate Litigation on Transparency and TSCA New Chemical Reviews

69.     In 2020, five environmental organizations filed a civil action in the U.S. District Court for the District of Columbia pursuant to Section 20 of TSCA, alleging that EPA has violated transparency and disclosure requirements under TSCA. *Env't Def. Fund v. Zeldin*, Civil Action No. 1:20-cv-762 (LLA) (D.D.C.) (First Amended Complaint, ECF No. 16) (June 19, 2020).

70.     In that lawsuit, which remains pending before United States District Judge Loren L. Alikhan, the plaintiffs include the Environmental Defense Fund ("EDF"), Center for Environmental Health ("CEH"), Environmental Health Strategy Center ("EHSC"), Natural Resources Defense Council ("NRDC"), and Sierra Club.

71.     The claims in this case include, generally, allegations that EPA had failed to publish timely notices related to TSCA Section 5 submissions; make health and safety studies available for public examination; and inappropriately allowed companies to make overly broad CBI claims.

72.     The parties had extensive disagreement over the scope of the administrative record, which included the plaintiffs' request for EPA to release copies of full, unredacted PMNs on the basis that they may contain health and safety information.

73.    This broad demand for access to full, unredacted PMNs based on the plaintiffs' allegations against EPA would provide copies of protected CBI to the plaintiffs for the purposes of litigation, including information such as the specific chemical identity, composition information, specific production or manufacture volumes, and other information for which substantiation is not required, and other information that PMN submitters must diligently identify, certify, substantiate, and safeguard from disclosure to prevent substantial competitive harm.

74.    Following this Court's 2024 order granting the plaintiffs' motion to compel the administrative record, which directed the parties to meet and confer to define the scope of the administrative record, while not required by the Court, no subsequent records indicate that the parties sought to notify or engage in discussions the submitters whose CBI would be subject to such an extensive and sweeping disclosure of statutorily protected information to a third party. *Envt'l Def. Fund v. Zeldin*, Civil Action No. 1:20-cv-762 (LLA) (D.D.C.) (ECF No. 65) (Aug. 20, 2024).

75.    After the parties failed to reach an agreement on the scope of the administrative record, in December 2025, as part of compiling the administrative record, the court ordered EPA to produce for the purposes of judicial review the full, unredacted versions of approximately 80 PMNs, by March 23, 2026, pursuant to the terms of a Protective Order Governing Protected Information (or the "Protective Order"). The unredacted information in the PMNs would not only include information that plaintiffs allege should be considered health and safety information -- and thus not eligible for CBI protection -- but also sensitive information that is entirely unrelated to the plaintiffs' claims. Of note, the terms of the protective order were proposed by EPA and the plaintiffs and approved without modification by the Court. EPA did not object to the scope of this

order or the terms of the protective order. *Envt'l Def. Fund v. Zeldin*, Civil Action No. 1:20-cv-762 (LLA) (D.D.C.) (ECF No. 75) (Dec. 24, 2025).

76.     On February 11, 2026, and February 17, 2026, Arkema received notices from EPA pursuant to TSCA Section 14(g)(2) advising that EPA intended to release the full, unredacted copies of its PMNs to the plaintiffs in *EDF v. Zeldin* pursuant to TSCA Section 14(d)(9).

77.     The February 2026 notices also reference a protective order that ostensibly precludes public disclosure of the CBI and limits use of the documents to litigation purposes only. EPA did not provide a copy of the protective order or information on the intended recipients of the CBI in this notice.

78.     The protective order imposes substantially less stringent requirements than EPA itself requires to protect CBI, including lack of any requirements for safe storage and handling, no required training on safe and appropriate handling of CBI, no requirement for designated secure storage and work areas, no limitations on the number of potential CBI recipients, no designation of a central point of contact for overseeing safe handling of CBI, and minimal process and/or recourse for inadvertent disclosures. EPA's own TSCA CBI Security Manual includes 177 pages of highly-detailed and specific procedures and requirements.

79.     EPA intends, therefore, to release critical and statutorily protected information, information that is foundational to the investment in, development, and commercialization of new chemical products, without the safeguards demanded under TSCA Section 14 to prevent substantial commercial harm to submitters of information under TSCA Section 5.

80.     Such information will be released without reasonable safeguards and falls short of the standards that are demanded of EPA and regulated entities to ensure adherence to the

protections of TSCA Section 14, and without sufficient basis to support release pursuant to TSCA Section 14(d)(9).

81.    EPA's February 2026 notices indicated that Arkema's only remedy to restrain disclosure of the highly sensitive and commercially valuable CBI within its two PMNs was to, within 30 days from receipt of the notice, bring an action in federal court under TSCA Section 14(d)(2)(D)(i).

## COUNT I
### (Administrative Procedure Act ("APA"), 5 U.S.C. §§ 700, *et seq.*)

82.    Arkema realleges, reasserts, and incorporates by reference herein each of the foregoing allegations as though fully set forth herein.

83.    Under the APA, a court "shall hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

84.    EPA may not disclose "trade secrets" or "privileged or confidential" business information submitted to EPA that is received under TSCA, including confidential information contained in PMNs for new chemical substances. 5 U.S.C. §552(b); 15 U.S.C. § 2613(a).

85.    Arkema properly submitted and substantiated claims for confidentiality under TSCA with respect to sensitive and valuable business information contained in its PMN submissions. 15 U.S.C. § 2613(c). The validity of those claims is not at issue in this case, and the information is therefore entitled to protection under TSCA. 15 U.S.C. § 2613(a).

86.    Despite the fact that the *EDF v. Zeldin* litigation had been ongoing for years, Arkema was never been made aware that EPA and third parties were actively discussing the scope and terms of release of Arkema's CBI. EPA's failure to engage Arkema during this discussion --

an entity directly and significantly impacted by the decisions of EPA and the litigants -- constitutes a clear error in judgment and an abuse of the Agency's discretion.

87.    TSCA permits disclosure of CBI to a third party only in limited circumstances as set forth under TSCA Section 14(d). 15 U.S.C. § 2613(d). The limited and serious nature of the circumstances for disclosure of CBI underscore the strong focus in TSCA to ensure that legitimate CBI is otherwise subject to robust protections.

88.    TSCA Section 14(d)(9) authorizes EPA to disclose information "as required pursuant to discovery, subpoena, other court order, or any other judicial process otherwise allowed under applicable Federal or State law." 15 U.S.C. § 2613(d)(9).

89.    This provision, however, cannot reasonably be interpreted as authorizing EPA to disregard its obligations under TSCA to protect CBI, to disclose more CBI than "required" in a judicial process, to disclose CBI pursuant to requirements of a court order that is contrary to TSCA Section 14, or to condone processes for handling CBI that deviate from the many safeguards in place for handling such information under TSCA and EPA's implementing regulations.

90.    EPA did not object to or appeal the Order directing EPA to hand over unprecedented amounts of confidential data to a group of environmental non-governmental organizations (NGO), including a significant amount of information unrelated to the plaintiffs' claims in that case. At a minimum, EPA should have asked the Court to narrow the scope of its order to CBI pertaining to information that the litigants alleged to be "health and safety" information.

91.    EPA's failure to engage meaningfully in that case to narrow appropriately the scope of CBI disclosures to only those necessary and related to the claims at issue is both arbitrary and capricious, and unlawfully places the integrity of Arkema's CBI at risk.

92.     Additionally, EPA acted unlawfully in proposing and supporting the terms of the Protective Order, which is substantially less stringent than the standards for safeguarding CBI under TSCA and EPA's own implementing regulations. Likewise, EPA did not engage Arkema -- the entity most directly impacted by the intended disclosure -- to provide awareness and to offer an opportunity to weigh in on the appropriate terms of release.

93.     The release of Arkema's CBI in this context sets a concerning precedent regarding the ability for individuals to bypass the stringent protections for CBI by filing a civil action under TSCA Section 20. For EPA and third-party litigants to be able to concur on the scope and terms of CBI release outside the safeguards of TSCA Section 14 -- without involvement or awareness by the companies impacted by such decisions -- greatly undermines the protection afforded under TSCA for sensitive business information, and increases the risk of severe and irreparable harm to a company's financial interests. As such, the authority for disclosure under TSCA Section 14(d)(9) should be construed narrowly.

94.     Accordingly, EPA's intended disclosure of Arkema's CBI violates the APA, 5 U.S.C. § 706.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Arkema respectfully prays for the following relief:

A.     A declaration pursuant to 28 U.S.C. § 2201 that Arkema's CBI submitted to EPA pursuant to TSCA Section 5, 15 U.S.C. § 2604, is entitled to confidential treatment under TSCA Section 14, 15 U.S.C. § 2613;

B.     A declaration that EPA's decision to release Arkema's CBI pursuant to TSCA Section 14(d)(9), 15 U.S.C. § 2613(d)(9), as set forth in EPA's notice to Arkema under TSCA

Section 14(g)(2), 15 U.S.C. § 2613(g)(2), is arbitrary, capricious, or otherwise not in accordance with the law;

C.    Injunctive relief preventing EPA from releasing or disclosing the information in question;

D.    An order awarding Arkema its costs, expenses, and attorneys' fees incurred in these proceedings pursuant to 28 U.S.C. § 2412; and

E.    Such other and further relief as the Court deems just and proper.

Dated:  March 13, 2026                Respectfully submitted,

*/s/ Lynn L. Bergeson*
Lynn L. Bergeson (D.C. Bar No. 320796)
Kelly N. Garson* (D.C. Bar No. 1697582)
BERGESON & CAMPBELL, P.C.
2200 Pennsylvania Ave., N.W., Suite 100W
Washington, DC 20037
Telephone: (202) 557-3801
Facsimile: (202) 557-3836
lbergeson@lawbc.com
*\* Pro Hac Vice Forthcoming*

*Counsel for Arkema Inc.*